184 N.J. Super. 538 (1982)
446 A.2d 1217
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
DENNIS EDWARDS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted May 4, 1982.
Decided May 13, 1982.
*540 Before Judges MATTHEWS, PRESSLER and PETRELLA.
Stanley C. Van Ness, Public Defender, for appellant (Gerald P. Boswell, Assistant Deputy Public Defender, on letter brief).
Irwin I. Kimmelman, Attorney General of New Jersey, for respondent (David V. Brody, Deputy Attorney General, of counsel and on brief).
The opinion of the court was delivered by PRESSLER, J.A.D.
Pending direct appeal from the sentence imposed following his plea of guilty to a charge of aggravated sexual assault, defendant Dennis Edwards moved the trial court for sentence reconsideration pursuant to R. 3:21-10(d). The motion was denied by the trial judge on the ground that he was without jurisdiction to grant it. The merits were not considered. Defendant accordingly amended his notice of appeal to encompass an appeal from the denial of the sentence reconsideration motion and has moved us for summary disposition of that portion of the appeal pursuant to R. 2:8-3(b). We grant the motion for summary disposition and reverse.
The guilty plea to the sexual assault charge was entered on September 9, 1980. Defendant was sentenced on December 12, *541 1980 to an indeterminate term subject to a ten-year maximum. Notice of appeal from that conviction was not timely filed, and on May 12, 1981 defendant moved this court for leave to file the notice nunc pro tunc. We granted that relief by order entered June 2, 1981. The appeal is still pending.
Defendant made his motion to the trial court for sentence relief in February 1982. It was the trial judge's conclusion that the motion then made had failed to meet the time prescriptions of R. 3:21-10(a). Because be believed it to be untimely pursuant to the provisions of R. 3:21-10(a), he further concluded that he had no jurisdiction to entertain it under R. 3:21-10(d). We are satisfied that the judge erred in his construction of these rules.
Except as otherwise provided by R. 3:21-10(b), none of whose provisions are here applicable, a motion for sentence reconsideration must be made within 60 days after the entry of the judgment of conviction or, if a direct appeal has been taken therefrom, within 20 days after the date of the judgment of the appellate court. These are strict time requirements rendered nonrelaxable by R. 1:3-4(c). See, also, State v. Tully, 148 N.J. Super. 558 (App.Div. 1977), certif. den. 75 N.J. 9 (1977); State v. Sanducci, 167 N.J. Super. 503 (App.Div. 1979), certif. den. 82 N.J. 263 (1979).
Prior to the September 1981 adoption of R. 3:21-10(d) it was well settled that by reason of the jurisdictional constraints of R. 2:9-1(a), the trial court could not entertain a motion for sentencing relief during the pendency of an appeal from the conviction. Both the defendant and the court were obliged to await the disposition of the appeal, and if the appeal did not moot a request for sentence relief, the defendant was then afforded a period of 20 days following the judgment on appeal to pursue that remedy. The sole recourse available to a defendant wishing to avoid the preclusionary impact of R. 2:9-1(a) was to move this court during the pendency of the appeal for an order of limited remand to the trial court for the purpose of permitting the making and disposition of a motion for sentence relief prior to the entry of judgment on appeal.
*542 The motion for limited remand had become an increasingly current practice prior to September 1981. There are several reasons for that phenomenon. The first is the provision of R. 2:10-3, as adopted as part of the 1969 rules revision, which, following State v. Laws, 51 N.J. 494 (1968), cert. den. 393 U.S. 971, 89 S.Ct. 408, 21 L.Ed.2d 384 (1968), expressly recognized the right to appellate review of the quantum of a legal sentence on the ground of its alleged excessiveness. As a result, numerous such appeals ensued which might well have been rendered moot by the grant of resentencing relief pending appeal. Other pending appeals, taken from sentences alleged to be illegal, were also subject to being rendered moot if the trial court were permitted itself to consider and take corrective action pending appeal. And, finally, it was not unusual for circumstances encompassed by R. 3:21-10(b), such as defendant's physical or mental health problems or the availability to him of substance-abuse rehabilitation programs, to develop pending appeal with the consequence of rendering sentence relief particularly appropriate before disposition of the appeal.
In the interests of affording substantial justice to defendants and in the further interests of effective, orderly and economical administration of criminal justice, motions pending appeal for limited remand to the trial court to enable defendants there to pursue sentencing relief were virtually routinely granted. Increasingly it became evident that there are ordinarily good reasons for not requiring the deferral of the application for relief until after disposition of the appeal and, conversely, that there is no sound policy reason for precluding that practice. Accordingly, R. 3:21-10(d) was adopted, effective September 1981, expressly excepting applications for sentencing relief pending appeal from the general jurisdictional bar of R. 2:9-1(a) and permitting such motions to be made and entertained routinely. R. 3:21-10(d) provides simply that "Notwithstanding R. 2:9-1(a), the trial court may reconsider a sentence pursuant to the Rule during the pendency of an appeal upon notice to the Appellate Division." The notice requirement is obviously intended *543 only to serve this court's scheduling and calendaring processes. In view of this historical background, it is perfectly plain that in all cases in which the trial court may entertain a sentencing relief application after appeal, the effect of R. 3:21-10(d) is to permit it to entertain it pending appeal.
The problem perceived by the trial judge resulted from the fact that here the notice of appeal was filed nunc pro tunc by our order. Thus, the judge apparently reasoned that since the appeal had not been taken until after the expiration of the 60-day limit prescribed by R. 3:21-10(a), the right of defendant to seek relief under that rule had irrevocably terminated on the sixty-first day. It was apparently his further view that once the right had been thus extinguished, it could not be revived by a subsequently permitted nunc pro tunc appeal since such revival would constitute an enlargement of a nonenlargeable time period.
We are satisfied, however, that the anomaly which concerned the trial judge is more apparent than real. The two time periods specified by the rule, namely 60 days after conviction and 20 days after the judgment on appeal are disjunctively stated. Each is, therefore, of independent and equal significance. Judgments entered on direct appeals cannot for any practical purpose be distinguished from each other on the basis of whether the appeal was timely taken or permitted to be taken out of time. The whole point, moreover, of a nunc pro tunc order and what it means both literally and pragmatically, is that timeliness is achieved by the entry of the order. Thus, what is done now is assumed for all purposes to have been done then. Irrespective, therefore, of defendant's loss of the right to seek sentencing relief had he not appealed nunc pro tunc, the effect of our nunc pro tunc order was to restore him to the same position he would have been in had he filed a timely direct appeal. The direct appeal pending, defendant still has a maximum of 20 days following its disposition in which to seek resentencing relief. Since he may seek it after disposition of *544 this appeal, he was entitled, pursuant to R. 3:21-10(d), to seek it pending appeal.
The State suggests that the consequence of our construction of these rules will be to enable defendants who have missed the 60-day period impermissibly to enlarge that time by the simple expedient of an application for leave to appeal nunc pro tunc. Our answer to this, as we have recently pointed out in State v. Altman, 181 N.J. Super. 539 (App.Div. 1981), is that such applications are not routinely granted. The nunc pro tunc technique is a remedy reserved for indigent defendants under constitutionally mandated circumstances implicating counsel's default in responding to timely client instructions. Clearly, if defendant is entitled to a direct appeal nunc pro tunc, he is also entitled to all collateral benefits which may attend the taking of a direct appeal.
The order denying sentencing reconsideration is reversed and we remand for reconsideration on the merits of the application.