## MATTER OF POLANCO

### In Deportation Proceedings

### A-34403819

*Decided by Board October 21, 1994*

(1) An alien who has waived or exhausted the right to a direct appeal of a conviction is subject to deportation, and the potential for discretionary review on direct appeal will not prevent the conviction from being considered final for immigration purposes.

(2) Where an alien failed to file a timely appeal from his conviction and did not show that his request for a nunc pro tunc appeal pursuant to Rule 2:4-4(a) of the New Jersey Rules of Court had been granted, his conviction is final for immigration purposes.

CHARGE:

Order: Act of 1952—Sec. 241(a)(2)(A)(iii) [8 U.S.C. § 1251(a)(2)(A)(iii)]—Convicted of aggravated felony

Sec. 241(a)(2)(B)(i) [8 U.S.C. § 1251(a)(2)(B)(i)]—Convicted of controlled substance violation

ON BEHALF OF RESPONDENT:
Stephen A. Traylor, Esquire
20 Nassau Street, Suite 204
Princeton, New Jersey 08540-4509

ON BEHALF OF SERVICE:
Jane H. Minichiello
General Attorney

BY: Dunne, Acting Chairman; Vacca and Heilman, Board Members; Holmes, Alternate Board Member

The Immigration and Naturalization Service has appealed from a decision of the immigration judge dated January 13, 1993, terminating the proceedings in this case. The appeal will be sustained and the record will be remanded to the immigration judge for further proceedings.

The respondent is a native and citizen of the Dominican Republic who was admitted to the United States as a lawful permanent resident on June 10, 1977. An Order to Show Cause and Notice of Hearing (Form I-221) alleges that he was convicted on October 3, 1991, in the New Jersey Superior Court for Passaic County, of possession of a controlled dangerous substance (cocaine) with intent to distribute within 1,000 feet of school property.

At his hearing, the respondent denied the charge of deportability on the ground that he had filed a notice of appeal from his conviction and that the conviction was therefore not final. The attorney for the Service asserted that since the appeal had not been filed until July 1992, it was untimely. She conceded that the Appellate Division of the New Jersey Superior Court had "accepted" the respondent's late appeal, although no documentation of such acceptance had been offered or admitted into evidence. However, she argued that the conviction was final, citing *Matter of Adetiba*, 20 I&N Dec. 506 (BIA 1992), for the propositions that a conviction is final for immigration purposes when the right to direct appellate review has been exhausted, and that the finality of a conviction is not affected by the filing of a post-conviction motion. The immigration judge determined that the respondent's conviction was on direct appeal and terminated the proceedings.

On appeal, the Service contends that the respondent's conviction is final for immigration purposes because it was not timely filed. The Government relies on the definition of the term "conviction" set forth in 8 C.F.R. § 242.2(b) (1994), which provides:

The term *conviction* as used in section 242(i) of the Act means that—

(1) There has been a conviction by a court of competent jurisdiction; and

(2) All direct appeal rights have been exhausted or waived; or

(3) The appeal period has lapsed.

While acknowledging that the New Jersey Rules of Court provide a procedure for allowing a nunc pro tunc appeal, the Service asserts that such an appeal is discretionary and does not affect the finality of the respondent's conviction. We find that the respondent's conviction is final and will sustain the Service's appeal.

The question of when a conviction becomes final for immigration purposes has long been problematical. *See Matter of Ozkok*, 19 I&N Dec. 546, 548-49 (BIA 1988). The United States Courts of Appeals have generally agreed that a conviction is not final until direct appellate review has been either exhausted or waived, but one subject to collateral attack or other modification is final. *White v. INS*, 17 F.3d 475 (1st Cir. 1994); *Grageda v. INS*, 12 F.3d 919 (9th Cir. 1993); *Martinez-Montoya v. INS*, 904 F.2d 1018 (5th Cir. 1990); *Okabe v. INS*, 671 F.2d 863 (5th Cir. 1982); *Morales-Alvarado v. INS*, 655 F.2d 172 (9th Cir. 1981); *Marino v. INS, United States Dept. of Justice*, 537 F.2d 686 (2d Cir. 1976); *cf. Aguilera-Enriquez v. INS*, 516 F.2d 565 (6th Cir. 1975) (rejecting the "direct" versus "collateral" distinction in favor of finality after entry of guilty plea and completion of sentencing), *cert. denied*, 423 U.S. 1050 (1976); *Will v. INS*, 447 F.2d 529 (7th Cir. 1971) (concluding that a motion in arrest of judgment was in the

category of a direct appeal and its pendency precluded a finding of finality).

In *Morales-Alvarado v. INS, supra,* the Court of Appeals for the Ninth Circuit addressed the novel question of whether immigration authorities can consider a conviction final pending a discretionary appeal, commonly referred to procedurally as a "direct appeal," to the highest court of a three-tiered state system. Noting that prior caselaw had only precluded consideration of an alien's conviction while his appeal of right was pending, the court stated that a conviction is final once the alien has exhausted the direct appeals to which he is entitled. The court next determined that discretionary review on direct appeal is more analogous to a collateral attack than to a direct appeal of right for purposes of determining finality in immigration proceedings. Thus, it concluded that an alien cannot escape deportation while awaiting the disposition of a petition for discretionary review of his conviction in a state court, or, likewise, of a petition for a writ of certiorari to the United States Supreme Court.

The dissenting judge in *Morales-Alvarado* preferred to draw the line of finality between direct appeals and collateral attacks, noting that the most important difference between the two categories was that direct appeals, whether of right or discretionary, must be pursued within a clearly limited period of time. He observed that collateral attacks, on the other hand, are often subject to no such restriction. For this reason, the judge concluded that it would be "unreasonable to permit the availability of a collateral attack to render a conviction non-final." *Morales-Alvarado v. INS, supra,* at 175 (J. Canby, dissenting); *see also Aguilera-Enriquez v. INS, supra,* at 571 (noting that weighing the probability of success of every post-conviction motion would hopelessly complicate the process of deportation, "which Congress intended to be simple and swift").

We concur with the reasoning of the court in *Morales-Alvarado v. INS, supra.* We conclude, as did the majority in that case, that an alien who has either waived or exhausted his right to a direct appeal of his conviction is subject to deportation, and that the potential for discretionary review on direct appeal will not prevent the conviction from being considered final for immigration purposes. We further find merit in the dissenting judge's observation that it would be unreasonable to delay the proceedings on the basis of the availability of post-conviction review that is not limited by any time constraints. In light of this position, we now examine the New Jersey nunc pro tunc appeal procedure.

According to Rule 2:4-1(a) of the New Jersey Rules of Court, a defendant has the right to take a direct appeal within 45 days of the entry of a final judgment. *See Simmons v. Beyer,* 689 F. Supp. 432, 440

(D.N.J. 1988). If he fails to file a timely appeal within that period, the Appellate Division of the Superior Court may extend the time for appeal under the nunc pro tunc appeal procedure provided in Rule 2:4-4(a).[1] Although the rule permits an extension of the filing period for a maximum of 30 days, and a showing of good cause and the absence of prejudice must normally be shown, the Supreme Court of New Jersey has ordered the Appellate Division to relax these requirements in the case of indigent defendants. *State v. Altman*, 438 A.2d 576, 577 (N.J. Super. Ct. App. Div. 1981).[2] Such a defendant must nevertheless demonstrate that he made a timely request of his counsel to file an appeal on his behalf before the Appellate Division will grant leave to file a late appeal. *Id*. However, if that requirement is met, the court may permit the defendant to take a nunc pro tunc appeal "irrespective of the lateness of the hour." *Id*.[3]

Although instructed to relax the requirements of Rule 2:4-4(a) for indigent defendants, the Appellate Division has observed that "application[s] for leave to appeal nunc pro tunc" in such cases are not routinely granted. *State v. Edwards*, 446 A.2d 1217, 1220 (N.J. Super. Ct. App. Div. 1982). We note in this regard that *Simmons v. Beyer, supra*, illustrates the denial of a defendant's motion for nunc pro tunc appeal by the Appellate Division, despite a trial judge's finding that the required timely request for appeal to counsel had been expressed. It is thus evident that a motion for leave to file a notice of appeal nunc pro tunc is discretionary in nature.

Following the rationale of *Morales-Alvarado v. INS, supra*, we find that an alien who failed to file a timely appeal from his conviction under New Jersey law has a final conviction for immigration purposes, despite the potential for seeking a discretionary nunc pro tunc appeal. We consider it significant that the New Jersey Rules of Court contain no time constraints whatsoever to limit the period during which a defendant can request permission to take a nunc pro tunc appeal. Were

---

[1] Rule 2:4-4(a) provides as follows:

The appellate court, upon a showing of good cause and the absence of prejudice, may extend the time fixed by R. 2:4-1(a) (final judgment) ... for a period not exceeding 30 days, but only if the notice of appeal ... was in fact served and filed within the time as extended.

[2] In *State v. Altman, supra*, the court quoted a "Notice to Appellate Bar" from the Supreme Court of New Jersey, published at 100 N.J.L.J. 1208 (1977), which stated:

The Supreme Court has directed the Appellate Division to relax Rule 2:4-4(a) in favor of allowing an out-of-time appeal nunc pro tunc on behalf of an indigent criminal defendant in any case where it satisfactorily appears that the defendant, personally, within time, requested his trial counsel or the Public Defender's Office to file an appeal on his behalf.

[3] The defendant in *State v. Altman, supra*, moved to file a notice of appeal nunc pro tunc almost 2 1/2 years after his conviction, and the court granted his motion.

897

we to hold that a conviction under New Jersey law is not final simply because an alien retains the right to apply for a late appeal, his deportation proceedings could be postponed indefinitely by the mere existence of the nunc pro tunc appeal procedure. We do not believe that Congress intended for the deportation of a convicted alien to be so delayed. *See Aguilera-Enriquez v. INS, supra; Will v. INS, supra.*

In the case before us, the record contains a notice of appeal relating to the respondent, which is signed by the Public Defender and addressed to the Appellate Division of the Superior Court of New Jersey.[4] Although the parties to the appeal before us state that the respondent's nunc pro tunc appeal was "accepted" by the court, the notice of appeal is neither dated nor stamped by the Appellate Division. In any event, the significance of any such "acceptance" is unclear. There is no evidence, or even an allegation, that the court entered an order granting the respondent permission to file a late appeal or that such an appeal is presently under consideration. Under these circumstances, we find that the respondent has failed to show that he has been granted leave to take a nunc pro tunc appeal by the Appellate Division. Consequently, we conclude that the respondent's conviction is final for purposes of supporting a deportation order. The appeal will accordingly be sustained and the record will be remanded to the immigration judge for further proceedings.

Inasmuch as the respondent has not shown that he has been granted permission to take a late appeal, we need not determine what effect proof of a pending nunc pro tunc appeal might have on the finality of his conviction.

**ORDER:** The appeal of the Immigration and Naturalization Service is sustained and the record is remanded to the immigration judge.

---

[4] We note that nothing in the notice of appeal or the other documents submitted by the respondent indicates that he had asked counsel to submit an appeal on his behalf within the time for filing an appeal. We therefore question whether the respondent even met the requirements for seeking a late appeal. *See State v. Altman, supra.*